UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KIEF HARDWARE, INC. | CIVIL ACTION |
| VERSUS | NO: 16-15762 |
| HARTFORD FIRE INSURANCE CO. | SECTION: "A" (1) |

**ORDER AND REASONS**

The following motions are before the Court: **Motion for Partial Summary Judgment (Rec. Doc. 43)** filed by plaintiff, Kief Hardware, Inc.; **Motion for Partial Summary Judgment (Rec. Doc. 44)** filed by defendant, Hartford Fire Insurance Co. Both motions are opposed. The motions, submitted on April 18, 2018, are before the Court on the briefs without oral argument. For the reasons that follow, Plaintiff's motion is GRANTED and Defendant's motion is DENIED.

**I.  BACKGROUND**

On September 9, 2015, Plaintiff's property located at 16230 Highway 3235, Cut Off, Louisiana 70345, sustained damages as a result of a fire. The building was originally a hardware store established in 1944, which was being used for storage at the time of the fire. The Lafourche Parish Fire District ("LPFD") responded to the blaze. Captain Ryan P. Collins was first to arrive on the scene. Captain Collins prepared the incident report. The cause of the fire was undetermined but nothing in the report suggests that the fire was intentionally set. (Rec. Doc. 44-2). The LPFD contacted the State Fire Marshal to investigate the cause of the fire.

1

Michael Russell with the Office of State Fire Marshal ("OSFM") responded to the scene. His initial report reiterated that the cause of the fire was undetermined and the status of the investigation was open. (Rec. Doc. 44-3). In the incident report Russell stated that the OSFM was called in to investigate due to the "unusual circumstances." (*Id.*). To wit, the building was vacant and for sale, and during the fire cleanup the owner, Mr. James Cabirac, had arrived at the scene and removed the video recorder. (*Id.*). The very next sentence in the report clarifies, however, that Mr. Cabirac had secured the video recorder to examine it to determine if there were any recordings that would show what happened. (*Id.*). But again, nothing in the report suggests that the fire was intentionally set.

Plaintiff initiated this action in state court on September 9, 2016, to recover unpaid losses, as well as damages, penalties, and attorney's fees pursuant to La. R.S. 22:1892 and § 1973. Hartford removed the case to federal court.

The motions currently before the Court are essentially cross motions directed at the claims asserted under La. R.S. 22:1892, which provides for mandatory penalties when certain criteria are met. Plaintiff moves for partial summary judgment awarding penalties and attorney's fees for Hartford's alleged violation of the statute. Hartford, on the other hand, moves to have all of Plaintiff's "bad faith" claims dismissed on summary judgment.

A nonjury trial is scheduled to commence on July 25, 2018.

**II.    DISCUSSION**

Although Plaintiff seeks recovery for additional amounts allegedly owed under its

policy for property damage, $375,935.96 was the undisputed amount owed to Plaintiff. This total comprises a business personal property damage payment of $62,890.71, and a building coverage payment of $313,045.25. These payments were made on **February 2, 2016**, and on **February 25, 2016**, respectively. It is undisputed that Hartford's own adjuster finalized reports as to these amounts no later than **October 21, 2015**.[1] (Rec. Doc. 43-5, CIA reports). Thus, payment to Plaintiff of the "undisputed" amounts owed was not made until 104 days and 127 days after receipt of satisfactory proof of loss, for business personal property damage and building damage, respectively.[2]

Louisiana Revised Statute § 22:1892 mandates that an insurer pay the amount of any claim due within thirty (30) days after receipt of satisfactory proof of loss from the insured or any party in interest. La. R.S. 22:1892 (A)(1). Failure to timely make such payment when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent (50%) damages on the amount found to be due from the insurer to the insured, as well as reasonable attorney's fees and costs. La. R.S. 22:1892(B)(1). Once the requirements of the statute are satisfied, penalties and attorney's fees are mandatory rather than discretionary. *See Calogero v. Safeway Ins. Co.*, 753 So. 2d 170, 174 (La. 2000) (interpreting predecessor statute La. R.S 22:658).

---

[1] Hartford's adjuster inspected the property on September 9, 2015. The reports may have been provided to Hartford in the September timeframe that Plaintiff suggests but the Court will use the date stamped on the bottom of the report, which is October 21, 2015. Whether the date was in September or October of 2015 is not material to the Court's analysis.

[2] Hartford does not nor could it dispute Plaintiff's contention that the reports issued by its own adjuster on October 21, 2015, constituted satisfactory proof of loss.

3

The phrase "arbitrary, capricious, or without probable cause" is synonymous with "vexatious," and a "vexatious refusal to pay" means "unjustified, without reasonable or probable cause or excuse." *La. Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1114 (La. 2008) (quoting *Reed v. State Farm Auto. Ins. Co.*, 857 So. 2d 1012, 1021 (La. 2003)). Both phrases describe an insurer whose willful refusal of a claim is not based on a good-faith defense. *Id.* Penalties should be imposed only when the facts "negate probable cause for nonpayment." *Id.* (quoting *Guillory v. Travelers Ins. Co.*, 294 So. 2d 215, 217 (La. 1974)). In the absence of reasonable and legitimate questions as to the extent of the insurer's liability, an insurer who fails to pay the undisputed amount has acted in a manner that is, by definition, arbitrary, capricious, or without probable cause, and will be subject to penalties under the statute. *Id.* at 1116.

Again, Hartford received satisfactory proof of loss as to undisputed amounts on October 21, 2015. Although the cause of the fire had initially been undetermined, Hartford knew as of October 2, 2015, that its own investigator had ruled out arson and that the cause of the fire was likely a faulty electrical sign. (Rec. 43-17, HART-002028). This conclusion was confirmed in the investigator's report sometime in November 2015.[3] Therefore, as of November 2015 Hartford could no longer legitimately resist payment based on a question that its arson exclusion might preclude

---

[3] Even though the record unequivocally demonstrates that Hartford had communicated with its investigator and had actual knowledge as of October 2, 2015, that arson was not involved, the specific date that Hartford received its investigator's report is not clear from the record. The date is not material however because under Louisiana law penalties are not calculated on a day by day basis.

4

coverage.Nonetheless, Plaintiff was not paid the undisputed amounts until February 2016. If Hartford's withholding of payment of the undisputed amount for more than thirty days was arbitrary, capricious, or without probable cause then Plaintiff is entitled to penalties and attorney's fees under § 1892(B)(1). Under Louisiana law, proof of specific acts or proof of the insurer's state of mind is generally not required to establish conduct that is arbitrary, capricious, or without probable cause. *La. Bag*, 999 Sao. 2d at 1121.

Hartford defends its withholding of timely payment on two grounds, and offers these two defenses in support of its own motion for partial summary judgment. First, Hartford relies on La. R.S. 22: 1892(B)(2), which states:

> The period set herein for payment of losses resulting from fire and the penalty provisions for nonpayment within the period shall ***not*** apply where the loss from fire ***was arson related*** and ***the state fire marshal or other state or local investigative bodies have the loss under <u>active</u> arson investigation***. The provisions relative to time of payment and penalties shall commence to run upon certification of the investigating authority that there is no evidence of arson or that there is insufficient evidence to warrant further proceedings.

La. R.S. 22:1892(B)(2) (emphases added).

Hartford argues that the delay afforded by this statute was triggered when the LPFD called in the OSFM to investigate the cause of the fire. Hartford points out that La. R.S. 40:1566 mandates that municipal fire departments contact the fire marshal if circumstances indicate that the possible cause of the fire is human design or criminal neglect. Hartford points out that the OSFM did not close its investigation until June 22, 2016. Therefore, according to Hartford, it actually paid the undisputed amounts four months prior to the date when the thirty day period began to run.

5

The summary judgment record renders this assertion meritless. Captain Collins, Chief Kully Griffin, and Deputy Fire Marshal Russell all confirmed unequivocally during their depositions that arson was never suspected in this case even though the cause of the fire was undetermined.[4] The LPFD called in the OSFM not because arson was suspected but rather because the cause of the fire was undetermined and the state had the resources and expertise to properly investigate it. (Rec. Doc. 44-2, Collins deposition at 39). La. R.S. 40:1566 mandates that the local authorities contact the state fire marshal when arson is suspected but it does not follow that every contact with the OSFM necessarily implicates arson. The facts of this case bear out that conclusion—no one with LPFD suspected arson when the call was made to the OSFM and the OSFM did not suspect arson when it agreed to help investigate the fire.

But even if La. R.S. 40:1566 imputes suspicion of arson in all cases in which the OSFM is called in to investigate, § 1892(B)(2) expressly requires an *active* arson investigation in order for the tolling period to apply. It is clear from the summary judgment record that the OSFM never engaged in an active arson investigation or any investigation for that matter once Hartford's own investigator, Mr. Don Horaist, began to investigate the fire on September 14, 2015. It is clear from the updates to Russell's report that he was deferring to Horaist to investigate the cause of the fire. (Rec. Doc.

---

[4] This case stands in stark contrast to Judge Fallon's *Dennis v. Allstate Insurance Co.*, No. 10-795, 2011 WL 870508 (E.D. La. Mar. 10, 2011), decision cited by Hartford. In that case the New Orleans Fire Department determined almost immediately that the fire had been set intentionally. Gasoline appeared to have contributed to the spread of the fire. And, the insurer had been advised by federal authorities that the insured was being investigated for health care fraud, and that the government suspected that the fire was used as a cover to destroy evidence. (*Id.* at *1).

6

44-3). Given the absence of any objective indicators of arson, the OSFM chose not to be actively involved in the investigation. And while it is true that the OSFM's investigation remained "open" until June 22, 2016, this only occurred because Horaist never contacted Russell to inform him that arson had been ruled out and the cause of the fire had been determined months earlier. It was Russell who finally reached out to Horaist to determine whether he could close his file. To the extent that the OSFM's involvement could be characterized as an arson investigation at all, it was by no means an active one.

Of course, much of the summary judgment record evidence was gathered during the course of this litigation in March 2018 when the depositions were taken. An insurer's conduct is evaluated based on the facts known to the insurer at the time of its action. *La. Bag*, 999 So. 2d at 1114 (quoting *Reed*, 857 So. 2d at 1021). Hartford's representative made no attempt to point to any of the facts upon which Hartford might have reasonably relied upon to believe that arson was involved so as to withhold payment. (Rec. Doc. 44-4, Reynolds affidavit). As far as the Court can tell there were no such facts because none of the reports generated in the aftermath of the fire even allude to arson. In argument, Hartford points out that Russell's report narrative mentions "unusual circumstances," which were that the building was vacant and for sale, and during the fire cleanup the owner, Mr. James Cabirac, had arrived at the scene and removed the video recorder. But again, none of this suggests arson and the owner's attempt to salvage security footage from a smoldering building is hardly indicative of criminal activity. Nowhere does the file indicate that Mr. Cabriac secreted the video,

7

altered it, withheld it, or destroyed it. Again, Hartford's reliance on La. R.S. 22:1892(B)(2) to escape penalties is without merit.

Second, Hartford attributes the delay in payment to an internal error that caused an endorsement to be added to the policy that would have precluded coverage. In order to correct the error, Hartford reformed the policy on January 29, 2016, and paid the undisputed portion of the claim within thirty days.

Hartford's representative made no attempt to refute Plaintiff's contention that the erroneous endorsement was added to the policy due solely to Hartford's negligence when it amended the policy upon renewal. The error in this case was unilateral in nature, and Hartford was aware of the error as of December 31, 2015. (Rec. Doc. 43-17, HART-001046). An insurer's error in misinterpreting its own policy provisions is not a reasonable ground for delaying payment. *La. Bag*, 999 So. 2d at 1117 (citing *Carney v. Am. Fire & Indem. Co.*, 371 So. 2d 815, 819 (La. 1979)). Therefore, the issue related to reformation does not constitute cause to delay timely payment.[5]

In sum, Hartford's failure to pay the undisputed portion of Plaintiff's claim was without probable cause. As such, Plaintiff is entitled to a 50 % penalty of $187,967.98 on the undisputed sum of $375,935.96, plus reasonable attorney's fees and costs. Moreover, given that Hartford failed to timely pay the undisputed portion of the claim,

---

[5] The reformation argument is unconvincing for another reason. Although Hartford's representative was silent on when Hartford actually determined that an erroneous endorsement had been applied to the policy, (Rec. Doc. 44-4, Reynolds affidavit), the emails of record suggest that the error was not discovered until January 7, 2016. (Rec. Doc. 43-17, HART-001401). Meanwhile, Hartford knew as of October 2, 2015, that arson had been ruled out as a cause of the fire. It is clear then that Hartford did not act expeditiously to pay the undisputed amounts of the claim even after arson was no longer an issue.

Hartford will be subject to penalties on the disputed portion of the claim should Plaintiff prove that additional property damages are owed. *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 370 (5th Cir. 2009).

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. 43)** filed by plaintiff, Kief Hardware, Inc. is **GRANTED** as explained above;

**IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. 44)** filed by defendant, Hartford Fire Insurance Co. is **DENIED**.

May 18, 2018

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE